ELEANORE B. WILLIAMS, ADMINISTRATRIX (ESTATE OF DAVID WILLIAMS) *v.* MARIA SALAMONE ET AL.
(11172)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued November 8, 1983—decision released January 24, 1984

*Elizabeth A. Gallagher,* with whom were, *Frank W. Sledziona* and, on the brief, *William F. Gallagher,* for the appellant (plaintiff).

*Anthony I. Wells,* for the appellees (defendants).

SHEA, J. In a trial arising out of a vehicular collision between the plaintiff's decedent[1] and the defendant, Maria Salamone, the jury returned a verdict for the defendants. The plaintiff made a motion to set aside the verdict, alleging that members of the jury had discussed the case among themselves prior to deliberating, contrary to the court's instructions. The court denied the motion, holding that the plaintiff had not met her burden of proving that prejudice probably resulted from the jurors' misconduct.

In her appeal, the plaintiff claims the court erred in (1) requiring her to carry the burden of proving prejudice; (2) requiring proof of probable rather than possible prejudice and; (3) finding that the plaintiff had not met the burden of proving probable prejudice. We find no error.

At trial evidence was introduced from which the jury could have reasonably found the following facts: On October 2, 1977, Mrs. Salamone and her son were visiting Maria Berardi, Mrs. Salamone's sister-in-law, at her home at 475 Woodin Street in Hamden. Woodin Street runs to the east and west of Mrs. Berardi's home; it is thirty feet wide and is divided by a double yellow line. It runs level in a westerly direction from the Berardi home for approximately 143 feet before dropping down a six foot knoll.

At approximately 8 p.m. Mrs. Salamone began backing a 1964 Plymouth Valiant owned by the defendant Michael Salamone out of the driveway and onto Woodin Street. She first looked to her right and then to her left. Her sister-in-law, who was standing on the sidewalk to the right of the car, signaled that the road was clear. Mrs. Salamone then backed directly out onto the street.

---

[1] The decedent, David Williams, died in April, 1979, from causes unrelated to the collision with the defendant.

The decedent, David Williams, who was driving his motorcycle in an easterly direction on Woodin Street, passed Belton Street and drove up over the knoll toward the defendant. A motorist, entering Woodin Street from Belton Street, witnessed a motorcycle and a car pass in front of his car, apparently racing and both traveling at "an excessive rate of speed."

As the decedent approached the Salamone car, he applied his brake. The motorcycle skidded for seventy-eight feet before colliding with the rear end of the car. An expert estimated that the decedent had been traveling between forty and forty-three miles per hour prior to the collision—fifteen miles per hour faster than the posted speed limit.

Responding to the interrogatories prepared by the court, the jury found that Mrs. Salamone had been negligent in her operation of the motor vehicle, but concluded that her negligence was not the proximate cause of the collision.

One week later the plaintiff's counsel was informed by a member of the jury that the jurors had been discussing different facets of the case during the course of trial, contrary to the court's instructions.[2] Thereafter the plaintiff moved to set aside the verdict and a hearing was held. At the hearing members of the panel indicated that discussions had occurred concerning the testimony, in order to "be sure of what we heard . . . just for the sake of accuracy, not in a judgmental sense." A juror also stated that another juror had referred to a map not in evidence in order to check where the accident had occurred. Finally, another juror

---

[2] In his opening remarks the trial judge admonished the jury not to discuss the case during trial: "Furthermore, you are not to discuss this case among yourselves or commence your deliberations until the conclusion of all the evidence, and then only after the court has given you its charge." He repeated similar instructions throughout the three day trial.

stated that the panel had discussed during trial factors that might affect the credibility of certain testimony.[3]

## I

There is no doubt that, although acting in good faith, the jurors did violate the court's instructions, and began initial discussions prior to receiving the court's charge. "Discussion is an integral part of deliberations. . . . Discussion contemplates the interchange of opinions. Once a juror has expressed an opinion on key evidence to his fellows, the die may well have been cast." *State* v. *Washington,* 182 Conn. 419, 428, 438 A.2d 1144 (1980). Our inquiry must not stop here, however. "The rule, long ago enunciated by this court, is that 'if it does not appear that [the juror misconduct in question] was occasioned by the prevailing party, or any one in his behalf; if it do[es] not indicate any improper bias upon the juror's mind, and [if] the court cannot see, that it either had, or might have had, an effect unfavourable to the party moving for a new trial; the verdict ought not to be set aside.' " *Bernier* v. *National Fence Co.,* 176 Conn. 622, 628, 410 A.2d 1007 (1979), quoting *Pettibone* v. *Phelps,* 13 Conn. 445, 450 (1840).

"[I]n a criminal case the defendant is constitutionally entitled to a presumption of prejudice stemming from certain types of misconduct during the course of trial [;] in a civil case the burden is properly placed on the moving party to show prejudice toward him as a result of jury misconduct, at least where the opposing party has no part in the incident." *Hamill* v. *Neikind,* 171 Conn. 357, 360 n.5, 370 A.2d 959 (1976); *Pettibone*

---

[3] The juror gave the following example:

"Well, motorcycles were discussed an awful lot and the person who gave the professional testimony.

"Q. The engineer?

"A. The engineering person, yes. How much weight should be given to that because he was being paid to testify."

In fact, no evidence had been introduced at trial establishing that the witness was being paid.

v. *Phelps,* supra. The plaintiff now invites this court to depart from this long-standing rule, maintaining that because juror misconduct implicates the right to a fair trial in a noncriminal case, a civil litigant should also be entitled to a presumption of prejudice, overcome only by a showing that there "was no possibility of prejudice to the moving party."

Prior cases clearly indicate that it is only when errors of constitutional magnitude occur during a criminal trial that the state has the burden of proving them harmless beyond a reasonable doubt. See *Chapman* v. *California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1966); *State* v. *Washington,* supra, 429; *Aillon* v. *State,* 168 Conn. 541, 547–48, 363 A.2d 49 (1975). The initial burden is on the defendant, however, to establish that the error involved a constitutional right.[4]

The burden is on the moving party in a civil proceeding to establish that juror misconduct denied him a fair trial. See *Bernier* v. *National Fence Co.,* supra; *Hamill* v. *Neikind,* supra; *Pettibone* v. *Phelps,* supra. Juror misconduct in a civil proceeding does not by itself infringe constitutional rights; that question can only be determined after measuring the degree to which the misconduct affected the impartiality of the jury. To impose the burden of establishing the validity of the verdict on the prevailing party where he did not bring about the impropriety would be contrary to our sense of

---

[4] Because of the nature of certain misconduct, the criminal defendant merely has to establish its occurrence in order to establish a constitutional error: "It has . . . become a universally accepted principle that communications between a judge and a jury, especially after the jury have begun deliberations, should be made only in open court in the presence of the parties. . . . In a criminal trial this rule takes on constitutional dimensions since the accused has a right to be present at every stage of the trial and to have the assistance of counsel for his defense. . . ." *Aillon* v. *State,* 168 Conn. 541, 546, 363 A.2d 49 (1975). Other kinds of misconduct do not, by themselves, involve errors of constitutional dimension. See, e.g., *United States* v. *Klee,* 494 F.2d 394 (4th Cir.), cert. denied, 419 U.S. 835, 95 S. Ct. 62, 42 L. Ed. 2d 61 (1974) (jurors discussing case prior to deliberation).

justice and fair play.[5] We continue to adhere to the rule that, absent misconduct brought about by the prevailing party, the burden is on the complainant to show prejudice.

## II

The plaintiff's next assignment of error concerns the fact that the trial court required a showing of probable prejudice rather than possible prejudice. She claims that because a party is precluded from questioning jurors about the impact certain misconduct may have had on the verdict; see *Josephson* v. *Meyers,* 180 Conn. 302, 311, 429 A.2d 877 (1980); once misconduct is established, a moving party should be required to show only possible prejudice.

Beginning with *Bennett* v. *Howard,* 3 Day 219 (1808), this court has continually declared that jurors must obey the commands of their oaths in order to provide a fair trial to all parties. In certain instances, the court has required that the judgment be overturned where the misconduct unduly prejudiced a party, and denied the litigant a fair trial. See, e.g., *Tomlinson* v. *Derby,* 41 Conn. 268 (1874). We must candidly admit, however, that we have not clearly or consistently fashioned a rule for determining what degree of risk of bias requires that the verdict be set aside. See *Hamill* v. *Neikind,* supra, 360 (misconduct must generate "prejudice . . . or at least the possibility of it"); *Wood* v. *Holah,* 80 Conn. 314, 316, 68 A. 323 (1907) ("there must appear to have been prejudice . . . or at least the possibility of it"); *Tomlinson* v. *Town of Derby,* supra, 274 (highly probable that misconduct prejudiced the unsuccessful party); *Hickox* v. *Parmelee,* 21 Conn. 86, 100 (1851) (misconduct must "have a necessary, or even proba-

[5] We note that the plaintiff would require the prevailing party to establish "no possibility of prejudice" whenever juror misconduct occurred. That is tantamount to imposing the beyond-a-reasonable-doubt standard upon a civil litigant. This would radically alter the nature of a civil proceeding.

ble, tendency to bias the opinion of the juror'');[6] *Pettibone* v. *Phelps,* supra, 451 (''if it appear[s] that the unsuccessful party either did, or might, have sustained injury from the juror's misconduct'').

With a few possible exceptions, a chance of prejudice inheres in every instance of juror misconduct. For this reason the courts scrupulously guard against its occurrence. Nevertheless, we have frequently declared that not every instance of misconduct requires a new trial. *Hamill* v. *Neikind,* supra; *Pettibone* v. *Phelps,* supra. Were we to adopt the test set out by the plaintiff, almost every instance of juror misconduct would in fact result in a new trial.[7] We believe, therefore, that the trial court adopted a more prudent and reasonable test: ''whether the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror.''

### III

In her final claim of error, the plaintiff claims that the court erred in finding that she had failed to meet her burden of proving probable prejudice. We disagree.

[6] There is apparently no clear majority rule. See, e.g., *Johnson* v. *Haupt,* 5 Kan. App. 2d 682, 685, 623 P.2d 537 (1981) (new trial should not be granted unless juror misconduct substantially prejudiced a party); *York* v. *Wyman,* 115 Me. 353, 355, 98 A. 1024 (1916) (new trial should not be granted unless the party might have been prejudiced); *Bellows Falls Village Corporation* v. *State Highway Board,* 123 Vt. 408, 413, 190 A.2d 695 (1963) (new trial should not be granted unless misconduct was capable of prejudicing a party). Texas Rule of Civil Procedure 327 provides that juror misconduct is a ground for a new trial only when the party establishing misconduct can show that it was material and probably harmful. See *Strange* v. *Treasure City,* 608 S.W.2d 604, 606 (Tex. 1980). Misconduct that was prejudicial is considered material. Id., 607.

[7] The fact that the plaintiff was not permitted to assess the impact that the misconduct may have had on the jury's deliberations does not alter our decision on this matter. In reviewing juror misconduct, the trial court is not concerned with mental processes of the jurors, but the nature and quality of the misconduct. See *Aillon* v. *State,* 168 Conn. 541, 550–51, 363 A.2d 49 (1975). The question is whether the misconduct is of such a nature that it probably rendered the juror unfair or partial.

At the post trial hearing it was established that one juror had consulted a map in order to establish the location of the accident and that members of the panel had discussed elements that might affect the credibility of the testimony. The incident concerning the map is best described as an innocuous indiscretion by one member of the panel. For whatever reason the map was used, to satiate curiosity or clarify testimony, it is abundantly clear that the trial court could reasonably have found that it had no probable prejudicial effect.

The conversations concerning the credibility of certain witnesses are greater cause for concern. It is axiomatic that a resolution of credibility is strictly a matter for the jury; *Gallicchio Bros., Inc.* v. *C & S Oil Co.*, 191 Conn. 104, 109, 463 A.2d 600 (1983); *Hughes* v. *Contemporary Mission, Inc.*, 180 Conn. 150, 151, 429 A.2d 827 (1980); but that resolution should be made after the charge to the jury, not before. Nevertheless, we agree that this misconduct did not establish a probability of prejudice. One juror stated that the discussions were "just for the sake of accuracy, not in a judgmental sense." Another juror testified that they were for the purpose of "reassur[ing] ourselves if we heard correctly. And we knew [sic] from one thing to the other to make sure we made the right decision when the time came for it to be done." In light of the foregoing it is clear that, although discussion occurred prior to deliberation, the finding of the trial court that the plaintiff was probably not prejudiced thereby is sufficiently supported by the evidence produced at the hearing.

There is no error.

In this opinion the other judges concurred.