[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION IN ARREST OF JUDGMENT
By way of amended complaint dated January 29, 1998, the plaintiff, Michelle Horan, sought damages from the defendant, Peter Murgio, for injuries resulting from a motor vehicle accident allegedly caused by the defendant's negligence, carelessness and statutory violations. The plaintiff alleged that the defendant, while traveling directly in front of the plaintiff, stopped his automobile suddenly and without warning causing the plaintiff to collide with the rear of the defendant's automobile. The case was tried to the jury which returned a verdict in favor of the defendant.
Thereafter, the plaintiff filed a motion to set aside verdict based on the claim that the verdict was against the evidence and a motion in arrest of judgment based upon juror misconduct. CT Page 10679
In its memorandum of decision filed on May 20, 1998, denying the plaintiff's motion to set aside verdict this court stated:
"Considering the evidence in the light most favorable to sustaining the verdict, Purzycki v. Fairfield, 244 Conn. 101, 107
(1988), the jury could have found the following facts. On June 22, 1994, the plaintiff was operating her motor vehicle. The plaintiff was driving twenty-five miles per hour and was ten to fifteen feet behind the defendant. As the defendant entered the intersection of Fort Hill Road and Ring Drive, at which intersection a flashing yellow signal light was operating in the direction of the plaintiff and the defendant, the defendant slowed his vehicle. The plaintiff did not apply her brakes and struck the rear of the defendant's vehicle, causing injuries to the plaintiff.
The evidence offered by the plaintiff and a police officer, who witnessed the accident, strongly contradicted the evidence favorable to the defendant. Both the plaintiff and the police officer testified that the defendant came to an abrupt stop in the intersection without giving a proper signal. The officer further testified that the plaintiff was not following the defendant too closely. The defendant did not testify at the trial and the evidence that he did not stop and was only slowing in the intersection was based on a statement he gave to the officer at the time of the accident."
This court denied the motion to set aside because there was some evidence upon which the jury could have reasonably based its verdict.
"[A]bsent misconduct brought about by the prevailing party, the burden is on the complainant to show prejudice. That burden requires the moving party to demonstrate that the juror misconduct complained of resulted in probable prejudice to the moving party." (Citations omitted; internal quotation marks omitted.) Speed v. DeLibero, 215 Conn. 308, 314 (1990); see alsoWilliams v. Salamone, 192 Conn. 116, 120 (1984). "[A] party has been prejudiced by juror misconduct if the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror." (Internal quotation marks omitted.) Turk v. Silberstein, 48 Conn. App. 223,227 (1998).
If it appears that the jury may have been exposed to CT Page 10680 prejudicial extrinsic evidence, "the trial court must conduct an investigation to determine whether juror misconduct occurred."State v. Migliaro, 28 Conn. App. 388, 396 (1992). "Allegations of racial bias on the part of a juror are fundamentally different from other types of juror misconduct because such conduct is, ipso facto, prejudicial. . . . A trial court must be especially vigilant in investigating the specter of racial prejudice in the judicial process." State v. Santiago, 245 Conn. 301, 336 (1998). Discrimination on the basis or race, odious in all aspects, is especially pernicious in the administration of justice. Id., 335. Although the trial court has discretion in determining credibility and in determining the scope and form of the court's inquiry, the breadth of questioning should be sufficient to permit the entire picture to be explored. Id., 336. "[T]he interview with the person reporting such remarks should include the context of the remarks and should seek to identify other persons who were in a position to state what, if anything, they heard." Id., 338. The court's inquiry "should include direct questioning of the juror alleged to have made the prejudicial comments." Id. Such an interview permits the trial judge to observe the juror's demeanor under cross-examination and to evaluate his answers in light of the particular circumstances of the case. (Internal quotation marks omitted.) Id., 339.
On July 2, 1998, plaintiff's counsel and this court questioned juror Jacqueline Ballato on the record. Ms. Ballato gave the following testimony. Immediately after the trial, Ms. Ballato advised the plaintiff's counsel that another juror had made derogatory and personal comments about the plaintiff during deliberations. Ms. Ballato could not recall the juror's name, but recalled that she was a special education teacher. The juror referred to the plaintiff as a "low life" or "white trash," and the juror commented on the fact that there was a black man in the plaintiff's life. Ms. Ballato stated, "it was obvious to me and I think a few other people on the jury that she was prejudiced against this woman for the lifestyle that she was part of. . . ." The "juror was very dogmatic and opinionated and, when the jurors were discussing the merits of the case, the juror would mention things that had to do with the plaintiff's lifestyle." The juror referred to the race of the plaintiff's "boyfriend in a derogatory manner more than once" and indicated that she disapproved of the fact that the plaintiff was with a black man.
Based on information supplied by counsel for the plaintiff and the defendant which indicated that Katherine Bialowas was the CT Page 10681 juror suspected of misconduct, the court subpoenaed Ms. Bialowas to appear before the court on July 21, 1998. Counsel immediately realized that Ms. Bialowas was not the juror suspected of misconduct, but, nevertheless, the court requested Ms. Bialowas to testify to determine whether she heard racial comments during deliberations. Ms. Bialowas testified to the following. She remembered a juror who was a special education teacher, but could not recall her name. The special education teacher was a "bigot". The juror "made references to Ms. Horan's boyfriend who was a black man, and that the police officer was a black man, and that they probably knew each other because they all did." Ms. Bialowas thought that the juror's statement was "a very bigoted statement." The juror commented on the fact that the plaintiff was a cocktail waitress and "not very high class." Ms. Bialowas stated, "at one point, I honestly said to her, you just don't like her, do you, and she just said, no, I don't think I do." Ms Bialowas was concerned about the juror's racial comments and believed that the juror's prejudices influenced the juror's decision.
Having concluded that Christina Danoff was the juror suspected of misconduct, the court subpoenaed Ms. Danoff to appear before the court. Ms. Danoff was questioned by plaintiff's counsel, on the record, on August 13, 1998. This court's conclusion is that Ms. Danoff's testimony was not credible. She was extremely defensive and hostile during the entire inquiry. Although she ultimately denied that she made racial comments during deliberations, her answers were often vague and panicked.[1] This court finds that the testimony of Ms. Ballato and Ms. Bialowas was credible, based upon their demeanor during the court's inquiry and the fact that they corroborated each other's testimony.
This court finds that the plaintiff has met her burden of proving that the juror misconduct complained of resulted in probable prejudice to the plaintiff. This court finds it probable that Christina Danoff was an unfair and prejudicial juror.
Accordingly, the plaintiff's motion in arrest of judgment is granted.
Hendel, J.