BRENDA J. SAWICKI *v.* NEW BRITAIN GENERAL
HOSPITAL ET AL.
(SC 18479)

Rogers, C. J., and Norcott, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

Argued May 19—officially released October 25, 2011

*Laura Pascale Zaino*, with whom were *June M. Sullivan* and, on the brief, *John B. Farley* and *Richard C. Tynan*, for the appellant (defendant Mandell & Blau, M.D.'s, P.C.).

*Oliver B. Dickins*, for the appellee (substitute plaintiff Chester J. Sawicki).

McLACHLAN, J. The defendant, Mandell & Blau, M.D.'s, P.C.,[1] appeals from the judgment of the Appellate Court,[2] reversing the judgment of the trial court rendered following a jury verdict in favor of the defendant. *Sawicki* v. *New Britain General Hospital,* 115 Conn. App. 25, 26, 971 A.2d 709 (2009). The defendant claims that the Appellate Court improperly concluded that the trial court improperly denied the motion of the plaintiff, Brenda Sawicki,[3] to set aside the verdict and for a new trial on the basis of juror misconduct. The defendant further contends that, even if we conclude that the Appellate Court properly reversed the judgment of the trial court, the proper remedy was not to remand the case for a new trial. Instead, the defendant claims that the case should have been remanded for further proceedings, to allow the trial court to apply the proper legal standard.[4] We affirm the judgment of the Appellate Court.

This medical malpractice case arises out of the claimed failure of the defendant properly and promptly to diagnose the plaintiff with breast cancer. Jury selec-

[1] New Britain General Hospital also was named as a defendant, but the complaint against it was withdrawn prior to trial. All references to the defendant in this opinion are to Mandell & Blau, M.D.'s, P.C.

[2] We granted the defendant's petition for certification, limited to the following questions: "Did the Appellate Court properly determine that the trial court incorrectly denied the plaintiff's motion to set aside the verdict based upon juror misconduct? If the answer is 'yes,' was the Appellate Court correct in ordering a new trial?" *Sawicki* v. *New Britain General Hospital,* 294 Conn. 901, 982 A.2d 645 (2009).

[3] On September 2, 2009, the Appellate Court granted a motion to substitute Chester J. Sawicki, the executor of the estate of Brenda Sawicki, as the plaintiff in this appeal. For ease of discussion, we refer to Brenda Sawicki as the plaintiff.

[4] Because we conclude that the trial court applied the proper test, but did so in an abuse of its discretion, we need not address the defendant's claim that the Appellate Court should have remanded the case to the trial court for application of the proper test.

tion in this case commenced on June 7, 2006, and the presentation of evidence began on June 20, 2006. The jury deliberated and returned a verdict in favor of the defendant on July 19, 2006. Each juror affirmed the verdict in open court when individually polled.[5] On the basis of alleged juror misconduct, the plaintiff subsequently filed a motion to set aside the verdict and for a new trial. Following a hearing on the matter, the trial court denied the plaintiff's motion. The plaintiff appealed from the judgment of the trial court to the Appellate Court, which concluded that the trial court improperly had relied on "statements by the jurors that they kept their minds open despite the ongoing presubmission discussions." Id., 40. By doing so, the Appellate Court reasoned, the trial court had "employed an incorrect legal analysis in determining whether the plaintiff was prejudiced by focusing its attention on the mental processes of the jurors and drawing conclusions from their testimony as to the actual effect of the misconduct, and not the probable effect of their misconduct as objectively judged by its nature and quality." Id. The Appellate Court reversed the judgment of the trial court, determining that the trial court had abused its discretion in concluding that the plaintiff was not prejudiced by the jurors' predeliberation discussions. Id., 43. This certified appeal followed.

The defendant claims that the Appellate Court improperly determined that the trial court improperly denied the plaintiff's motion to set aside the verdict and for a new trial based on juror misconduct. The defendant contends that the trial court applied the proper legal analysis in assessing whether the juror misconduct prejudiced the plaintiff and required a new trial, and did not abuse its discretion in concluding that the plaintiff had failed to sustain her burden of

---

[5] For a more complete recitation of the facts of the present case, see *Sawicki* v. *New Britain General Hospital*, supra, 115 Conn. App. 27–28.

demonstrating prejudice. The defendant also claims that, in arriving at its conclusion, the Appellate Court improperly found facts, assessed credibility and substituted its judgment for that of the trial court. The plaintiff responds that the Appellate Court properly concluded that the trial court improperly based its decision on evidence of the jurors' mental processes, rather than on its own objective assessment, focusing on the nature and quality of the misconduct, of the probability that the misconduct prejudiced the plaintiff. Although we agree with the defendant that the trial court employed the proper legal analysis, we also conclude that the court abused its discretion in determining that the plaintiff did not meet her burden of proving that she was prejudiced. Therefore, we conclude that the Appellate Court properly reversed the judgment of the trial court, and properly remanded the matter to the trial court for a new trial.

The following additional facts and procedure are relevant to the resolution of the defendant's claim. The jury returned its verdict in favor of the defendant on July 19, 2006. Subsequently, in late July or early August, two of the jurors, P and G,[6] met with the plaintiff and her attorney over dinner at the plaintiff's house.[7] In support

[6] In the interest of preserving the confidentiality of the jurors, we refer to them by initials. See General Statutes § 51-232 (c).

[7] Although the contact, after the verdict, of the plaintiff and the plaintiff's attorney with P and G is not at issue in this appeal, we observe that the nature and extent of that contact were extraordinary and troubling, prompting the trial court to find both P and G not credible. After the initial dinner at the plaintiff's home, for example, P and G continued to exchange e-mails and telephone calls both with the plaintiff and her attorney. The sworn affidavits of P and G were prepared and submitted following these telephone calls and e-mails.

In particular, the record reveals that P's interactions with the plaintiff and her counsel were highly questionable. P had repeated contacts with the plaintiff, her family, her attorney, and one of the plaintiff's expert witnesses. The disconcerting nature of that contact derives not only from its frequency and extent, but the content of the communications. In one e-mail that P had sent to the plaintiff's attorney, later reviewed by the trial court during the misconduct hearing, P stated: "I will do anything I can in my power to

of her motion to set aside the verdict and for a new trial, filed in September of 2006, the plaintiff submitted the sworn affidavits of these two jurors. In a hearing on the plaintiff's motion, the trial court heard testimony from all the jurors except L, who had passed away.

Following that misconduct hearing, the trial court issued a memorandum of decision finding that there had been juror misconduct during the trial.[8] The court also found that P and G, who had submitted affidavits in support of the plaintiff's motion for a new trial, were not credible. See footnote 7 of this opinion. Accordingly, in setting forth the applicable facts, we do not consider the testimony of those two jurors. The testimony of the remaining jurors, as summarized by the trial court in its memorandum of decision, revealed the following: Within the first two days of trial, M had stated that his mind was made up, and that he was "against the plaintiff." He also stated that he believed that the trial was a waste of time and that there was "no case to be decided . . . ." On the second day of trial, M sent a note to the court stating: "Judge, I need to speak with you about a bias I have in this case."

When the court questioned him regarding his note, he explained that his bias against the plaintiff stemmed from her failure to seek a second opinion on the sonogram of her breast, a course of action that, in M's view, constituted allowing her health, the "whole thing . . . [to] fall by the wayside . . . ." In M's opinion, the plaintiff's failure actively to safeguard her health in this particular instance contrasted sharply and incongruously with the plaintiff's generally high level of control, in

win this case for you and Brenda," and announced: "I am now on Brenda's team." Additionally, during P's testimony during the misconduct hearing, it became apparent that he was on a first name basis, not only with the plaintiff, but also with the plaintiff's counsel.

[8] The defendant does not challenge that finding on appeal.

M's view, of "business, family and everything."[9] The court reminded M of its instruction that jurors may not engage in predeliberation discussions, and instructed him to wait until he had heard all of the evidence and the court's final charge before making up his mind about the case. With the agreement of both parties, M remained on the jury. During the misconduct hearing, C confirmed that M had been "frustrated that the plaintiff had refused all treatments . . . ."

M was not the only juror who discussed the case prior to deliberations. M stated at the misconduct hearing that, in fact, "[t]here was a lot of discussion going on in the jury room." S testified that L had stated his bias against the plaintiff and had told others how he planned to vote. M indicated that other jurors repeatedly stated that the plaintiff simply did not "have a case." K recalled C "talking about the size of the [plaintiff's] tumor," and testified that there were "judgment calls on the relative credibility of expert witnesses." For example, M stated that a number of jurors considered the testimony of the defendant's expert from New Haven to be "overwhelming" and believed that the defendant had made "a very, very strong . . . point . . . ." M further testified that other jurors commented that an expert witness from San Diego "did not present himself well." Notwithstanding all of the predeliberation discussions concerning the strength of the plain-

---

[9] When the court questioned M during the trial as to whether he had expressed these views to other jurors, M replied that he had not. M's representation to the court is inconsistent, however, with C's testimony during the misconduct hearing, and the trial court's attendant finding that M made improper statements informing other jurors of his bias against the plaintiff only *prior* to speaking to the court regarding his opinions. Accordingly, in our analysis, we do not rely on M's representation to the court during trial that he had not expressed his position on the merits of the plaintiff's case to other jurors prior to speaking to the court.

For the same reason, we do not rely on M's testimony at the misconduct hearing that when he returned to the jury room *after* speaking to the court, he told others what he had told the court.

tiff's case, all of the jurors, including M, testified that they had followed the court's instructions to wait to hear all of the evidence and the court's final charge before making up their minds. After considering all of the foregoing, the trial court concluded that the plaintiff had failed to sustain her burden of showing that she had been prejudiced by the misconduct.

We review a trial court's determination regarding whether juror misconduct has prejudiced a party for abuse of discretion. *State* v. *Roman*, 262 Conn. 718, 727, 817 A.2d 100 (2003). "We recognize that the trial judge has a superior opportunity to assess the proceedings over which he or she personally has presided . . . and thus is in a superior position to evaluate the credibility of allegations of jury misconduct, whatever their source." (Citations omitted.) *State* v. *Brown*, 235 Conn. 502, 527–28, 668 A.2d 1288 (1995). Moreover, "[a] trial judge is generally in the best position to evaluate the critical question of whether the [misconduct] . . . has prejudiced [the moving party]." *State* v. *Rodriguez*, 210 Conn. 315, 326, 554 A.2d 1080 (1989). "[I]n such an inquiry, which is essentially factual, the trial court that conducts it is in the best position to assess the testimony of those on the jury panel, including [the] impact [of the misconduct] on the fairness of the trial, and its conclusion is entitled to substantial weight." (Internal quotation marks omitted.) Id., 330. "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Gupta*, 297 Conn. 211, 238, 998 A.2d 1085 (2010).

"[I]t is improper for jurors to discuss a case among themselves until all the evidence has been presented, counsel have made final arguments, and the case has been submitted to them after final instructions by the trial court." *State* v. *Washington*, 182 Conn. 419, 425, 438 A.2d 1144 (1980). "When jurors . . . discuss the

case among themselves [prior to formal deliberations], either as a whole or in groups . . . [they] give premature consideration to the evidence presented—consideration unaided by the final instructions of the trial court as to the law to be applied to the facts in the case." (Internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 627, 682 A.2d 972 (1996).

Not every instance of juror misconduct, however, requires a new trial. *Williams* v. *Salamone*, 192 Conn. 116, 122, 470 A.2d 694 (1984). "[T]he burden is on the moving party in a civil proceeding to establish that juror misconduct denied him a fair trial. . . . That burden requires the moving party to demonstrate that the juror misconduct complained of resulted in probable prejudice to the moving party. . . . In sum, the test is whether the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror." (Citation omitted; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 104, 956 A.2d 1145 (2008).[10]

In light of the public policy concerns implicated once a judgment has been rendered, we limit the type of evidence that may be considered in impeachment of a jury's verdict. "Although [litigants] . . . have an interest in impartial jury trials . . . after a jury verdict has been accepted, other . . . interests emerge that favor proceedings limited in form and scope. The [courts have] a strong interest in the finality of judgments . . .

---

[10] "[I]n a criminal case the defendant is constitutionally entitled to a presumption of prejudice stemming from certain types of misconduct during the course of trial . . . [whereas] in a civil case the burden is properly placed on the moving party to show prejudice toward him as a result of jury misconduct, at least where the opposing party has no part in the incident." (Internal quotation marks omitted.) *Williams* v. *Salamone*, supra, 192 Conn. 119. Because there is no allegation that the defendant brought about the juror misconduct in the present case, the plaintiff bears the burden of demonstrating that the misconduct denied her a fair trial.

and in protecting the privacy and integrity of jury deliberations, preventing juror harassment and maintaining public confidence in the jury system. See generally *Tanner* v. *United States*, 483 U.S. 107, 120–21, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987)." (Citations omitted.) *State* v. *Brown*, supra, 235 Conn. 531.

Historically, this court's rule was to preclude *any* juror testimony in impeachment of a verdict. *Aillon* v. *State*, 168 Conn. 541, 549, 363 A.2d 49 (1975) (discussing rule adopted by Lord Mansfield in *Vaise* v. *Deleval*, 1 T.R. 11 [K.B. 1785]). Although we have moved away from a complete prohibition against such testimony, we have confined its scope to the facts of the misconduct, that is, "testimony regarding the failure to obey certain essential formalities of juror conduct . . . ." *Aillon* v. *State*, supra, 550. The trial court must apply an objective standard in assessing prejudice, focusing on the nature and quality of the misconduct. *Williams* v. *Salamone*, supra, 192 Conn. 122 n.7. Accordingly, we have excluded testimony regarding the effect of the misconduct on the juror deliberations or "influence on the mental process of the jurors." (Internal quotation marks omitted.) *Aillon* v. *State*, supra, 549. We have explained that "the rule that prohibits the examination of the jurors' mental process excludes, as immaterial, evidence as to the expressions and arguments of the jurors in their deliberations and evidence as to their own motives, beliefs, mistakes and mental operations generally, in arriving at their verdict. [C.] McCormick, Evidence (2d Ed. [1972]) § 68, p. 148." *Connecticut Light & Power Co.* v. *Gilmore*, supra, 289 Conn. 106. In addition, we have stated that "a trial court may inquire about whether members of the jury observed the situation, whether they discussed it during deliberations, and whether they, as individuals, arrived at a fixed opinion as to the situation such that they were unable to deliberate with open and impartial minds. . . .

Beyond that, however, as we recognized in *Aillon* . . . a court may not tread. A court may not inquire as to [e]vidence of the *actual effect* of the [misconduct] upon jurors' minds because such evidence implicates their mental processes . . . . [O]nce a verdict has been reached, the proper inquiry does not involve a determination of what conclusions the jurors actually drew but, rather, of whether the jurors were aware of or actually exposed to the [misconduct], whether it affected their ability to be impartial and whether it was of such a nature that it probably rendered the juror[s] unfair or partial." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Johnson*, 288 Conn. 236, 262–63, 951 A.2d 1257 (2008). Postverdict motions seeking a new trial on the basis of claimed juror misconduct implicate two seemingly conflicting principles; the right of the parties to a fair and impartial jury and the long established principle we have discussed regarding the dangers of intruding into the deliberative process. Thus, in *Johnson* we clarified the route to be taken by the trial court in resolving these claims.

"In determining the nature and quality of the misconduct we must be mindful that the concerns . . . [are] not simply that the jurors may have discussed the evidence pre-submission, but that they may have taken positions on the evidence." (Internal quotation marks omitted.) *State* v. *Castonguay*, 194 Conn. 416, 437, 481 A.2d 56 (1984). We specifically have stated that predeliberation discussions in which jurors have taken positions on the merits of the case carry a high risk of prejudice. "[I]t is human nature that an individual, having expressed in discussion his or her view of the [merits of the case], would be inclined thereafter to give special attention to testimony strengthening or confirming the views already expressed to fellow jurors. . . . Also, the human mind is constituted so that what one himself publicly declares touching any controversy is much

more potent in biasing his judgment and confirming his predilections than similar declarations which he may hear uttered by other persons. When most men commit themselves publicly to any fact, theory, or judgment they are too apt to stand by their own public declarations, in defiance of evidence. This pride of opinion and of consistency belongs to human nature." (Citations omitted; internal quotation marks omitted.) *State* v. *Washington*, supra, 182 Conn. 426.

Applying these principles to the facts of the present case, we conclude that, although the trial court applied the proper test, it abused its discretion in concluding that the plaintiff had not established that she was prejudiced by the misconduct. The trial court did consider the nature and quality of the misconduct, and also properly considered juror testimony as to whether the members of the jury had arrived at a fixed opinion as a result of the misconduct. What the trial court failed to do, however, was to consider the jurors' testimony that they had followed the court's instructions in the context of the entire inquiry, which must focus primarily on the facts of the misconduct. Our review of the record reveals that the repeated instances of misconduct in the present case were so severe and egregious that no reasonable fact finder could have concluded that the plaintiff had failed to establish prejudice. In light of the overwhelming evidence of misconduct, the trial court simply accorded too much weight to the jurors' testimony that they nonetheless had followed the court's instructions and were not influenced by the misconduct.

The many statements made by various jurors who took positions on the merits of the case by far constituted the most egregious misconduct. M had indicated very early in the proceedings, and repeatedly, that he had already made up his mind and that he was "against the plaintiff." L had expressed the same position and

had indicated that he would vote accordingly. More-over, the more general and repeated comments of other jurors, who remarked that the plaintiff "just [didn't] have a case," although not as pointed as the views expressed by M and L, leave little doubt as to the speakers' assessment of the merits of the plaintiff's case. We have been very clear that a juror's commitment of "himself or herself to a position on the evidence . . . [is] the *primary danger* associated with jurors' presubmission discussion of the evidence or issues in the case." (Emphasis added.) *State* v. *Newsome*, supra, 238 Conn. 631. As is the case for any individual who expresses a position on the issue to be decided, once M and L, as well as the other unidentified jurors who stated that the plaintiff did not have a case, had declared their positions, they were more likely to view subsequent evidence in light of their stated position, giving "special attention to testimony strengthening or confirming the views already expressed to fellow jurors." *State* v. *Washington*, supra, 182 Conn. 426. The related inference is equally significant: once a juror commits to a stated position, that juror is likely to give less attention to or to discount testimony and other evidence that is inconsistent with that position. Additionally, the statement of one's position on the merits not only shapes the lens through which one views subsequent evidence, it also constitutes a commitment to that position, making it more difficult for the speaker subsequently to change his or her view, despite what later evidence may reveal. See id. These difficulties are compounded by the fact that the speaker's statement of his or her position also has the potential to influence other members of the jury.

Some of the remaining comments, although they do not expressly constitute taking a position on the evidence, nevertheless provide further external, objective evidence of bias. Particularly, jurors' remarks assessing

the relative strengths of the testimony of expert witnesses, characterizing the testimony of the defendant's experts as "overwhelming" and as having made "a very, very strong . . . point," support the inference that the jurors were considering the merits of the case well before the close of evidence and the court's final instruction. Finally, the sheer quantity of the improper remarks and the fact that many jurors made improper comments, persuades us that, far from representing isolated instances of misconduct, improper remarks permeated the entire trial. In light of the pervasive and egregious improper predeliberation discussions, we conclude that it is probable that one or more jurors viewed the evidence in an unfair and prejudicial manner.

As the trial court recounted in its memorandum of decision, it had questioned each of the jurors during the misconduct hearing as to whether they had followed the court's instruction to keep an open mind until hearing all the evidence and the court's final charge. In concluding that the plaintiff had failed to show that she had been prejudiced by the misconduct, the court primarily relied on the fact that all of the credible jurors testified that they had followed the court's instructions. It was not improper for the court to rely on the jurors' testimony that they followed its instructions. We disagree with the Appellate Court that the trial court, by inquiring of each juror at the misconduct hearing whether he or she had been able, despite the misconduct, to retain an open mind, "focused on the testimony of the jurors and the assertions they made during the hearing as to the *actual impact* the misconduct had on them." (Emphasis added.) *Sawicki* v. *New Britain General Hospital,* supra, 115 Conn. App. 39. As we explained in *State* v. *Johnson,* supra, 288 Conn. 264, a trial court properly may "inquire as to *whether* the jurors drew fixed opinions [as a result of the miscon-

duct] . . . that impeded their ability to approach deliberations with a fair and open mind."[11] (Emphasis added.) The prohibition against inquiries as to the actual effect of misconduct bars questions regarding "what conclusions the jurors *actually* drew . . . ." (Emphasis in original.) Id., 262–63. For example, in addition to relying, properly, on the jurors' general testimony that they had followed its instructions, the trial court also improperly remarked in its decision that jurors who had heard M's remarks stating that he had made up his mind and that he was against the plaintiff *interpreted* his statements as stemming from his frustration at the slow pace of the trial and his related financial concerns. In this statement, the trial court "tread across the line," taking into consideration the jurors' testimony as to the actual conclusions that they had drawn from the improper remark and also delving into the jurors' mental processes. We emphasize that this single statement in the trial court's memorandum of decision constituted a very small part of its analysis—we do not read the decision to rely significantly on this single, improper statement.

Accordingly, the trial court's abuse of discretion did not lie in the mere fact that the court considered the testimony of the jurors that they followed its instructions. With the single exception that we have noted, the court did not consider the mental processes of jurors or the actual effect of the misconduct in arriving at its conclusion. Rather, the court's abuse of discretion stemmed from its failure to recognize that the testimony of the jurors that they followed the court's instructions simply was not sufficient to outweigh the overwhelming evidence of repeated, egregious misconduct.

---

[11] Because we conclude that the trial court properly could consider and rely upon the jurors' testimony that they followed its instruction to retain an open mind, we need not address the defendant's argument to that effect.

In contending that the trial court did not abuse its discretion in concluding that the plaintiff failed to establish prejudice, the defendant contends that the trial court did not rely solely on the testimony of the jurors that they had followed instructions. The defendant points to the fact that the trial court stated in its memorandum of decision that the improper remarks did not rise to the level of deliberations or discussions, and that the court based its conclusion in part on the fact that the jury sent a note asking the court a substantive question during its deliberations, indicating that the jury had not made up its mind prior to deliberation. We find the defendant's arguments unpersuasive.

We first observe that, although the trial court did not rely solely on the jurors' testimony that they complied with instructions, that testimony was the primary basis for its conclusion that the plaintiff had failed to establish prejudice. The portions of the trial court opinion cited to by the defendant provide little additional support for the trial court's conclusion. The trial court stated in its memorandum of decision that it did not "find that any remarks or statements rose to the level of deliberations. The term deliberate means [t]o weigh, ponder, discuss, regard upon, consider . . . to weigh in the mind; to consider the reasons for and against. Black's Law Dictionary (5th Ed. [1979]). Discussion is an integral part of deliberations. . . . Discussion contemplates the interchange of opinions. *State* v. *Washington*, supra, 182 Conn. 427–28." (Internal quotation marks omitted.) It is possible to interpret this excerpt as a finding that the remarks did not rise to the level of "discussion." Certainly, a determination that the misconduct at issue involved only a few isolated remarks would be significant in weighing the likelihood of prejudice. As we have stated repeatedly, however, the improper remarks in the present case permeated the entire process, and involved many jurors.

The trial court's factual findings make clear that throughout the trial the jurors made comments regarding the merits of the case and the credibility of the witnesses. The frequency of the remarks, the fact that many jurors made such remarks and the sheer quantity of the remarks overwhelmingly demonstrate prejudice. The trial court's suggestion that remarks cannot form a discussion unless they are part of an immediate exchange, involving the give and take of a conversation, establishes an overly formalistic definition of "discussion." It is possible, as occurred in the present case, for a "discussion" to have a less structured format, taking place over time, with many interruptions. We have defined the essence of a discussion in this context as including the "interchange of opinions." *State* v. *Washington*, supra, 182 Conn. 428. As the trial court's factual findings indicate, that is precisely what occurred in the present case. The jurors' own testimony was that there was "a lot of discussion" and that the discussion involved the exchange of opinions regarding the merits of the plaintiff's case. The brevity of some of the remarks does not change the fact that the exchange of opinions took place.[12]

Furthermore, the trial court's observation that the jury sent a note asking a substantive question does not sufficiently counter the extreme and pervasive misconduct in the present case. In *State* v. *Castonguay*, supra, 194 Conn. 435–36, in which the trial court improperly had instructed jurors that they could discuss, but could not deliberate, prior to the close of evidence and the court's final instruction, we rejected the state's claim that the length of jury deliberations, along with the

---

[12] We agree with the trial court that discussions are an integral part of deliberations. We further observe that one of the dangers of predeliberation discussions is, as we have explained in this opinion, that a juror may take a position before all of the evidence has been heard, which makes the unfettered consideration of the merits of the case by that juror more difficult.

jury's request for the reading of certain testimony, was sufficient to refute the presumption that the jury had followed the court's instructions. Similarly, in the present case, the fact that the jury sent a note asking a substantive question during deliberations is not sufficient to outweigh the testimony at the misconduct hearing.

Nor are we persuaded by the defendant's argument that the judgment of the Appellate Court should be reversed on the ground that it improperly found facts, weighed evidence and assessed the credibility of witnesses. Although we agree with the defendant that the Appellate Court opinion appeared to rely on facts derived from the discredited testimony of P and G,[13] and included in its summary of the facts some testimony that had not been included in the trial court's factual findings,[14] our analysis expressly has avoided relying

[13] In its summary of the relevant facts, the Appellate Court included the following facts derived solely from the testimony of P and G. G testified at the misconduct hearing that M was "very biased, particularly against women." *Sawicki v. New Britain General Hospital*, supra, 115 Conn. App. 29. G also testified that M stated that the plaintiff was " 'gonna lose' " and that, when M returned from speaking to the court regarding the note he had sent during trial, he remarked, " 'I can't believe they're keeping me on this case.' " Id., 29–30. P testified that when M returned, he " 'was laughing and saying that [the plaintiff] can't win now because I'm still here.' " Id., 31. P also testified that *M had stated that he would not vote for the plaintiff; id., 30–31; and that " 'everyone' " believed that the case was " 'frivolous' . . . ." Id., 31.* P also testified that at one point, C entered the jury room following testimony regarding an algorithm and a chart, and stated that the case was over because she had seen all that she needed to see. In response, M laughed again, and stated that the case had been over " 'since the second day' " and that the court had made a "bad mistake" in keeping him on the jury because he would not vote for the plaintiff. Id. P further testified that both M and C had stated that the testimony of the plaintiff's expert was wrong. Id.

[14] For example, in its summary of the facts, the Appellate Court included M's testimony at the misconduct hearing that he had heard C opine that "if the plaintiff had followed the advice of her physicians, she probably would have gotten better"; *Sawicki v. New Britain General Hospital*, supra, 115 Conn. App. 32; as well as M's testimony "that he probably did express his opinion to the other jurors." Id. Although M did offer that testimony, the trial court did not include those facts in its memorandum of decision. The

on those facts. Instead, we accept the trial court's finding that P and G were not credible. Relying solely on the facts as found by the trial court, we have arrived at the same conclusion as the Appellate Court. Therefore, any reliance by that court on facts derived solely from the testimony of P and G, or on any testimony setting forth facts not included in the factual findings of the trial court, is immaterial.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

Appellate Court also included some testimony offered by K that had not been included in the trial court's memorandum of decision. Specifically, the trial court included K's testimony that C made comments regarding the size of the plaintiff's tumor, whereas the Appellate Court went further and reported K's whole testimony, which was that C made comments about the size of the plaintiff's tumor *and the different time frames.* Id., 33. The Appellate Court also included in its facts section K's testimony that, although "she did not specifically recall any comments suggesting that any of the jurors had made up their minds . . . [t]here could have been comments made like that." (Internal quotation marks omitted.) Id. Finally, the Appellate Court included in its facts S's testimony that C had stated, at the beginning of the trial, that "she did not like the plaintiff or the way the plaintiff was going about the case." Id., 34.

Although our comparison of the transcripts and the trial court's memorandum of decision highlights some omissions, the question of whether the trial court's factual findings were clearly erroneous is not before us. As a result, we scrupulously have avoided considering any testimony offered at the misconduct hearing that was not also included in the findings of the trial court in its memorandum of decision.

