(623 P.2d 537)
No. 50,959

CHARLENE J. JOHNSON and CHARLES JOHNSON, JR., Heirs at Law of Charles Johnson III, Deceased, *Plaintiffs-Appellees*, v. BEVERLY C. HAUPT, *Defendant-Appellee,* and CITY OF LEAVENWORTH, KANSAS, a Municipal Corporation, *Defendant-Appellant.*

Opinion filed February 13, 1981.

*Robert D. Beall,* of Leavenworth, for the appellant.

*Bill E. Fabian,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellees Johnson.

*William P. Coates, Jr.,* of Rushfelt, Mueller, Druten and Moran, of Overland Park, for the appellee Haupt.

Before PARKS, P.J., ABBOTT and REES, JJ.

PARKS, J.: This wrongful death action arose out of a fatal collision between a car driven by Beverly Haupt and the motorcycle of the decedent, Charles Johnson III. The parents of the decedent sued both Haupt and the city of Leavenworth. The jury

found that plaintiffs sustained total damages of $30,000 but attributed 30% of the fault to decedent, 5% to Haupt, 39% to Leavenworth and 26% to unnamed persons parked along the street. The city appeals the $11,700 (39% of $30,000) judgment imposed against it pursuant to the comparative negligence statute (K.S.A. 60-258a).

Appellant contends that the trial court erred in excluding the opinion testimony of Officer Wilkins concerning the speed of decedent's vehicle upon impact.

The opinion of an expert witness is generally admissible so long as (1) it is based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) the opinion is within the special knowledge, skill, experience or training of the witness. K.S.A. 60-456(*b*). See *e.g., Spraker v. Lankin,* 218 Kan. 609, 545 P.2d 352 (1976). However, the trial court has discretion to determine the qualifications of a witness to testify as an expert and to determine the admissibility of the testimony. To reverse the trial court, an abuse of discretion must be found. *Borth v. Borth,* 221 Kan. 494, 498, 561 P.2d 408 (1977).

Officer Wilkins testified that he was trained in accident reconstruction but there was no evidence that he carried out tests to determine the drag or the coefficient of friction of the road surface on 10th Avenue and the decedent's motorcycle. Moreover, his own testimony regarding the data needed to make an estimate of the collision speed included facts he did not know. Due to deficiencies in Wilkins' knowledge regarding this particular accident, we conclude there was no abuse of discretion in excluding his testimony. *Staudinger v. Sooner Pipe & Supply Corporation,* 208 Kan. 100, Syl. ¶5, 490 P.2d 619 (1971). Furthermore, witnesses who viewed the accident gave estimates of the speed of the motorcycle based on their common knowledge and experience. K.S.A. 60-456(*a*).

Appellant next contends that there was insufficient evidence establishing the acts of negligence alleged by plaintiff to compel submission of the case to the jury and that it was error to refuse to grant the city's motion for directed verdict. The plaintiffs allege the following four acts of negligence by the city: (1) failure to keep the roadway on the west side of 10th Avenue clear of traffic; (2) failure to enforce the no-parking signs in front of the school; (3) negligently posting a reduced speed limit for 3:00 p.m. to 4:00

p.m. although school was dismissed at 2:35 p.m.; and (4) failure to maintain the streets in good repair.

The scope of review of a denial of a motion for directed verdict is limited. The basic rule is as follows:

"In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for a directed verdict." *Frevele v. McAloon*, 222 Kan. 295, Syl. ¶ 5, 564 P.2d 508 (1977).

Reviewing the evidence of the city's alleged negligence, we find sufficient ambiguity in the testimony to justify sending the case to the jury. The evidence established that the city habitually failed to enforce the no-parking restrictions posted along the roadway and that on the day of the collision, cars were illegally double-parked. There was also testimony that the speed limit on 10th Avenue was reduced from 30 m.p.h. to 20 m.p.h. 25 minutes after the school was dismissed. While the designation of a reduced speed zone may be discretionary, the reasonableness of the city's exercise of that discretion is still a question for the jury. Overall, there was ample evidence of a congested and hazardous condition to avoid a directed verdict.

The city also argues that the court's instructions placed too high a duty of care upon it. Two primary rules regarding the review of instructions are that they must be construed as a whole (see *Bechard v. Concrete Mix & Construction Inc.*, 218 Kan. 597, 601, 545 P.2d 334 [1976]), and that error cannot be predicated on the refusal to give an instruction when its substance is adequately covered in other instructions (*Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, Syl. ¶ 12, 549 P.2d 1354 [1976]). Applying these rules, we note the court's instruction that, "A City rests under the positive legal duty to keep its streets in a condition reasonably safe for their intended use, and it is liable in a civil action for injuries resulting from neglect to perform this duty," was a correct statement of the law as set out in *Grantham v. City of Topeka*, 196 Kan. 393, Syl. ¶ 1, 411 P.2d 634 (1966). Moreover, the court included a patterned instruction which states that a city has a duty to use *ordinary care* to maintain its streets *reasonably* safe for travel. PIK Civ. 2d 12.60 (emphasis supplied). When considered as a whole, we hold that the instructions adequately protected the city and we find no error.

Finally, appellant complains that the trial court erred in denying its request to take the testimony of the jurors on its motion for new trial. This motion was based on two alleged instances of juror misconduct. At a hearing held pursuant to Supreme Court Rule No. 181 (225 Kan. lxxiv), the trial court held that investigation into the allegations would necessitate an improper inquiry into the deliberations of the jury.

Generally, a juror may testify as a witness concerning conditions or occurrences within or outside of the jury room having a material bearing on the validity of the verdict. K.S.A. 60-444. However, this general rule is subject to the limitations set out in K.S.A. 60-441 as follows:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent or dissent from the verdict or indictment or concerning the mental processes by which it was determined."

Therefore, whenever juror misconduct is alleged, there is a threshold question whether juror testimony may be received to establish the misconduct. If the evidence will not probe into the mental processes of the jury, it may be received. In addition, evidence may be taken to impeach a verdict if it will show actions of the jury which demonstrate an intentional disregard of the court's instructions or violation of one or more of the essential formalities of proper jury conduct. *Verren v. City of Pittsburg,* 227 Kan. 259, 607 P.2d 36 (1980). However, juror misconduct is not a ground for reversal, new trial or mistrial unless it is shown to have substantially prejudiced a party's rights. The party claiming the prejudice has the burden of proof. *State v. Fenton,* 228 Kan. 658, 620 P.2d 813 (1980).

The first instance of jury misconduct alleged by the city was that over the weekend recess one of the jurors read a newspaper article concerning the trial, then passed it around for the other jurors to read during the Monday morning deliberations. Testimony that the news article was introduced into the jury room deliberations would have evidenced a violation of the trial court's instruction that the jury consider only the evidence admitted at trial. However, we are convinced that the failure of the court to permit inquiry into this allegation was harmless error. Carefully reviewing the contents of this news item, we conclude that while

its consideration in the jury room was improper conduct, the substance of the article could have had no prejudicial effect—the article is a summary of the remarks of counsel made during closing argument. Therefore, inquiry of the jury concerning the alleged introduction of the item and its impact on deliberations would not compel a new trial. *Fenton,* 228 Kan. at 664. See also *Randle v. Turnpike Authority,* 181 Kan. 416, 420, 312 P.2d 235 (1957).

The second instance of alleged jury misconduct was that the jury reached a quotient verdict. A quotient verdict is one in which the jurors agree in advance to return as their verdict the amount obtained by averaging the figures each juror records as his verdict and subsequently return a verdict that is the direct product of such an agreement. Such a procedure subverts the deliberative process and is prohibited in Kansas. *Foster v. City of Augusta,* 174 Kan. 324, 329-30, 256 P.2d 121 (1953). Moreover, a subsequent polling of the jury does not diminish the harm already caused by the agreement.

Plaintiff argues that the verdict here could not have been a quotient verdict because the alleged average was the percentage of fault each juror imputed to the various parties rather than the award of damages. However, in a comparative negligence case, the allocation of fault is critical to any assessment of damages. An agreement to render a quotient verdict forfeits careful consideration just as completely whether the question being determined is the amount of damages or the assessment of liability. See *Clark v. Foster,* 87 Idaho 134, 141-43, 391 P.2d 853 (1964). Therefore, we hold that a verdict returned as the result of an agreement to be bound by an averaged percentage of fault in a comparative negligence case is a quotient verdict and cannot stand.

The quotient verdict alleged in this case is similar to the jury misconduct considered in *Verren,* 227 Kan. 259. There, the defendant had sought to introduce testimony that the jury improperly computed the plaintiff's damages by adding in a sum for attorney fees. The court stated that, if proven, the alleged conduct would have been prejudicial misconduct because it evidenced a conscious disregard of the trial court's instructions regarding the elements of damages the jury could consider. The court held that the trial court should have received testimony regarding the alleged misconduct and remanded the case for reconsideration of the new trial motion upon admission of this evidence.

A quotient verdict is similarly prejudicial because it violates the fundamental precept of proper jury conduct which dictates careful deliberation and a verdict based on the evidence. A party is entitled to a new trial if it is established that the jurors made an advance agreement to be bound by an averaged result and that agreement was carried out by using the resulting average as their verdict. It is not necessary to pry into the reasoning or motives of the jury; without inquiring into the individual juror's thought process, narrow questions may be directed to determine whether they agreed to be bound by an averaging technique.

As was held in *Verren,* we conclude that the proffered evidence concerning the alleged quotient verdict was admissible, and appropriate inquiry of the jurors should have been allowed. The case is remanded to the trial court to hold an evidentiary hearing on the motion for new trial. If the evidence introduced does not convince the trial court there was jury misconduct, the motion should be overruled and the judgment sustained; if the evidence establishes jury misconduct, a new trial should be granted.

The ruling of the trial court on the motion for new trial is reversed and the case is remanded for further proceedings on that motion in harmony with this opinion. All other issues raised on appeal are affirmed.

REES, J.: Concurring and dissenting.

The City's motion for a new trial claimed the jurors were guilty of misconduct because they considered the newspaper article. A copy of the 27 column-inch article was appended to and incorporated as a part of the motion. It is almost wholly devoted to a report of closing arguments of counsel for the three named parties. Portions are purported literal quotations of statements of counsel; portions are paraphrased statements of counsel. With but a single exception, the article is commendably free of editorial characterization of the arguments or their presentation.

The closing arguments are not in the record on appeal; they are not a part of the transcript. The reportorial accuracy of the article cannot be evaluated. In all deference to my colleagues, we cannot say the article is an accurate summary of the remarks of counsel during closing argument. There is no way for us to know. Perhaps the article is reasonably balanced. However that may be, still the article is a report by a non-juror of portions of the arguments

selected under the constraints of time and space governing the writer's labor.

The trial judge denied the City permission to present evidence that one or more jurors read the article during their deliberations prior to arrival at their answers to the special questions. This evidence necessarily would be the testimony of jurors. The position adopted by the trial judge was that even if the article was read, the City suffered no prejudice. The majority holds it was error to deny presentation of the testimonial evidence but the error was harmless because consideration of the article by the jurors could have had no prejudicial effect. In my view, the new trial for jury misconduct requirement that substantial prejudice to the rights of the movant must be shown should not apply here.

The trial transcript discloses that on each of at least seven occasions during trial, prior to the taking of recesses and prior to its return of the special question answers, the "jury was admonished." The admonitions are not reported of record. I assume that on each occasion the admonition was of the usual nature, was the "standard" language of admonition found in Kansas Benchbook, Kansas Judicial Council, p. 283 (1978), and included the instruction that "[y]ou shall not read or listen to any accounts or conversations of others concerning this case." If the jury was so instructed and if one or more jurors read the article, the latter, standing alone, constituted disregard and direct violation of the instruction.

The special question answers included not only determination of the monetary value of the wrongful death damages sustained by the plaintiffs, the heirs of the decedent, Charles Johnson III, but also the percentage of fault attributed to each of four parties, that is, the decedent, Haupt, the City and the unnamed persons parked along the street. Judgment was neither sought nor granted against the unnamed persons. The monetary judgments were $1,500 against Haupt and $11,700 against the City.

Whose rights may have been substantially prejudiced by the jury misconduct?

Attribution to the decedent of 50% or more of the total fault would bar recovery by plaintiffs. Assuming attribution to the decedent of less than 50% of the total fault, attribution of fault to the decedent and the other three mentioned parties in percentages other than as recited in the special question answers would

change the total amount to be recovered by plaintiffs—unless the only change is a different division between Haupt and the City of 44% of the total fault. It would change the individual amounts of recovery against Haupt and the City—unless the only change is a different division between the decedent and the unnamed persons of 56% of the total fault. It would not necessarily increase the recovery against the City. It could be either beneficial or detrimental to the plaintiffs, Haupt, or the City.

I believe that under the circumstances of this case, that is, the asserted conduct of the jurors, the trial judge's instructions, and the varied possibilities of prejudicial consequence, the requirement that the movant show substantial prejudice to its rights should not be applied if the evidence presented on rehearing of the City's motion for a new trial establishes that one or more of the jurors read the article.

Although there is language in opinions of our Supreme Court and in one or more opinions of this Court which on its face unqualifiedly requires that for a new trial to be granted substantial prejudice to the rights of the movant must be shown, it is appropriate to observe that in *Verren v. City of Pittsburg,* 227 Kan. 259, 261, 607 P.2d 36 (1980), it is said:

"On the other hand there are certain formalities of conduct which a jury is required to follow. Failure to obey these essential formalities of conduct can invalidate the verdict. Evidence may be offered in such cases to impeach a verdict when the evidence will show actions of the jurors by which they have intentionally disregarded the court's instructions or violated one or more of the essential formalities of proper jury conduct."

In this case, as it comes before us, there is no allegation or showing of evidence of "a conscious conspiracy by the members of the jury to disregard and circumvent the [trial judge's] instructions." (227 Kan. at 262.) But, I do not believe avoidance of the substantial prejudice requirement arises only where there is a "conscious conspiracy" by the jurors.

Simply put, I believe that in this case, if it is proved the newspaper article was read by one or more jurors, that fact, standing alone, establishes jury misconduct which requires a new trial.

It strikes me that application of the showing of substantial prejudice to the movant requirement is far less justified in a multi-party comparative negligence case than in traditional two-party cases.

I concur with the majority decision that this case be remanded for rehearing on the City's motion for a new trial. I disagree with the majority only in regard to the matter of the newspaper article; they and I agree there was jury misconduct if the article was read; they say that as a matter of law proof of such misconduct would be insufficient to merit a new trial; I say a new trial would be required.