No. 128,209

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MALCOLM MARQUIS ODOM,
*Appellant*.

SYLLABUS BY THE COURT

K.S.A. 21-6301(a)(2) prohibits "possessing with intent to use the same unlawfully against another, a dagger, dirk, billy, blackjack, slungshot, dangerous knife, straight-edged razor, throwing star, stiletto or any other dangerous or deadly weapon or instrument of like character." Because firearms are not "of like character" to the enumerated weapons and are covered in other subsections of this statute, this subsection does not apply to firearms.

Appeal from Labette District Court; STEVEN A. STOCKARD, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed in part, reversed in part, and remanded.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Alan Brereton*, deputy county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ATCHESON and CLINE, JJ.

CLINE, J.: A jury convicted Malcolm Marquis Odom of voluntary manslaughter, criminal possession of a weapon by a felon, and criminal use of a weapon after he shot and killed someone. On appeal, Odom claims he did not receive a fair trial because the

1

district court denied his motion to allow a prospective juror to testify in support of his motion for a new trial. He also challenges his convictions for criminal possession of a weapon by a felon and criminal use of a weapon.

After reviewing the record, we find the district court did not abuse its discretion in denying Odom's motion. The court found the affidavit from the prospective juror (who came forward after the trial) provided insufficient detail to justify further inquiry. The prospective juror could not identify the individuals who made the alleged improper statements during a break in jury selection, making it impossible to determine whether any of them made it on the jury. Nor does Odom argue that any of the prospective jurors who made the statements were empaneled. As such, we do not find the court erred in concluding Odom failed to show juror misconduct occurred, much less that the alleged misconduct substantially impacted his right to a fair trial.

As for Odom's conviction for criminal possession of a weapon by a felon, we agree the parties' elemental stipulation was insufficient but we find the error harmless based on his trial admissions.

And as for Odom's conviction for criminal use of a weapon under K.S.A. 21-6301(a)(2), we find this statutory provision does not apply to firearms. Because the jury was instructed that it could find Odom guilty for knowingly possessing a firearm, we find the jury instruction on this charge was clearly erroneous. Further, since the State offered no evidence that he possessed any weapon prohibited by this subsection, we find it presented insufficient evidence to support the charge. We therefore reverse this conviction.

*Did the district court err in denying the motion to allow an individual who did not serve on the jury to testify about alleged misconduct during voir dire?*

Odom first challenges the district court's denial of his motion to allow a prospective juror (who we call Rebecca) to testify in support of his motion for a new trial. At some point after trial, Rebecca told Odom's sister (who worked at Rebecca's son's school) that she overheard improper statements made by other prospective jurors during a break in the jury selection process. Odom then filed a motion for a new trial based on this alleged juror misconduct.

A few months later, Odom filed a motion to allow posttrial juror testimony under Supreme Court Rule 181 (2026 Kan. S. Ct. R. at 240), asking the district court to let Rebecca testify at the hearing on the motion for a new trial. He attached an affidavit from Rebecca to this motion. In the affidavit, Rebecca alleged that "prospective jurors were making statements that [Odom] had committed this crime and/or was guilty of this crime" and that they "were also making statements that because [Odom] was black that he must have committed the crime." Rebecca claimed another prospective juror said she would have to find Odom guilty if she was selected because it could affect her business in the community if she found him not guilty.

The State opposed the motion, noting that Supreme Court Rule 181 only applies to empaneled jurors. It argued that since Rebecca did not serve on the jury, she would be unable to offer any information about whether these alleged remarks impacted the verdict. It also pointed out that she offered no information about whether any of the prospective jurors who allegedly made these remarks were seated on the jury.

At the hearing on the motion to allow Rebecca to testify, the district court expressed concern about her inability to identify any of the prospective jurors who

allegedly made the remarks. Odom's counsel said he thought Rebecca could identify one prospective juror—but he admitted that person did not serve on the jury. After further pressing, he said he thought she "could name one other person, after I got into it further." But he offered no specifics nor did he say whether this person made it onto the jury.

The district court ultimately denied the motion, explaining:

> "I don't see anything in this affidavit that has any bearing on the verdict. Even if it was admitted, we are talking about unknown people saying vague things that the impact of which, whether they made it into the ears and minds of people on the jury, this is just so farfetched.
> . . . .
> "I just don't see the point. And I am looking at the affidavit and the information sworn out by [Rebecca], includes nothing but hearsay statements, and it is simply not going to be admissible without more.
> "And so I guess you can make another run at it if you want to provide me more information. But based upon what I am reading, I am going to deny that request."

After the district court denied the motion to allow Rebecca to testify, Odom asked the court to take up his motion for a new trial at sentencing. Then, at sentencing, Odom shifted focus from Rebecca's affidavit to arguing about comments by another prospective juror when questioned in voir dire. Odom mentioned this prospective juror—who was also struck—remarked that he believed Odom was guilty based on Odom's charge of criminal possession of a weapon by a felon. Odom argued these remarks "kind of tainted the jury pool." But Odom acknowledged that he failed to object to the comments when they were made.

The district court denied Odom's motion for a new trial after determining he failed to show a reasonable probability that the verdict was impacted—either by the statements alleged in Rebecca's affidavit or the comments by the other prospective juror.

On appeal, Odom contends the comments Rebecca overheard and the comments by the prospective juror in voir dire showed the prospective jurors were biased towards him, which denied him his right to a fair trial.

Before we begin, we should discuss what is not at issue in this appeal. First, while Odom mentions the district court's denial of his motion for a new trial, he only challenges its denial of his motion to allow Rebecca to testify. We therefore find he has waived his right to appeal the decision on his motion for a new trial by failing to brief it. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (issues not adequately briefed are considered waived or abandoned).

Next, to the extent he relies on remarks made during voir dire to support his claim of error, we find he has waived any objection to those remarks or any arguments about how those remarks may have impacted the jury because he failed to contemporaneously object to them. See *State v. Wood*, 235 Kan. 915, 918-19, 686 P.2d 128 (1984) (defendant's failure to object contemporaneously, coupled with his affirmative act of passing the jury for cause, waived any complaint defendant may have had relative to prospective juror's statement in voir dire).

We therefore focus on whether the district court erred in denying Odom's motion to allow Rebecca to testify.

*Standard of Review*

A party seeking to impeach a verdict based on juror misconduct must demonstrate both that misconduct occurred, and that the misconduct substantially prejudiced that party's right to a fair trial. *State v. Fulton*, 269 Kan. 835, 840, 9 P.3d 18 (2000). The decision whether to call jurors back to court for an evidentiary hearing is reviewed for an abuse of discretion. *Kelly v. Bell Taxi*, No. 66,181, 1991 WL 12018385, at *2 (Kan. App.

1991) (unpublished opinion) (citing *Cornejo v. Probst*, 6 Kan. App. 2d 529, 537, 630 P.2d 1202 [1981]). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

*Odom failed to demonstrate juror misconduct occurred.*

Importantly, Odom's claim is based on statements from a person who did not serve on his jury about alleged statements from other people who were also not empaneled. So his argument suffers from the threshold problem that he cannot demonstrate misconduct by any actual juror.

Next, the district court correctly noted Rebecca's affidavit was vague about what was said, who said it, and who else may have overheard it. That is, the affidavit did not recount how many prospective jurors made these statements or who, besides Rebecca, may have overheard them. And, when questioned, Odom offered no reassurance that Rebecca would be able to provide this information if called to testify. Affidavits seeking to establish juror misconduct must be sufficiently detailed to explain what happened in order to determine whether misconduct occurred. Speculative and conclusory affidavits do not meet this standard. See *Vallejo v. BNSF Railway Co.*, No. 119,100, 2021 WL 402066, at *9 (Kan. App. 2021) (unpublished opinion).

*Regardless, Odom fails to establish his right to a fair trial was substantially prejudiced.*

Even if we assume the statements recounted in Rebecca's affidavit—and her proposed testimony about the same—established juror misconduct, Odom has not shown that his right to a fair trial was substantially prejudiced.

6

First, Odom's argument does not explain how these statements could have impacted the jury or its verdict—he simply argues that the statements evidenced bias on the part of the prospective jurors who made them. But Odom has the burden to prove the alleged juror misconduct substantially prejudiced his right to a fair trial—and he has failed to connect the dots. See *Johnson v. Haupt*, 5 Kan. App. 2d 682, 685, 623 P.2d 537 (1981) (the party claiming juror misconduct prejudiced their rights has the burden of proof).

Based on the record and Odom's admission, the prospective juror who may have remarked that a not guilty verdict would impact her business did not make it onto the jury. Thus, we are left with Rebecca's statement that one or more prospective jurors believed—before they heard any evidence—that Odom was guilty because he was Black. But he offers no evidence nor does he argue that any of these people were empaneled. And without evidence that jurors overheard the comments (which he does not claim Rebecca could have provided), we fail to see how his verdict could have been affected.

Another problem with Odom's argument is the statements occurred during the jury selection process—that is, before the jurors heard any evidence. Thus, he has not shown whether any jurors ultimately convicted him based on the expressed biases of prospective jurors or the evidence presented at trial.

Our Supreme Court addressed statements evidencing that a juror had prejudged a defendant's guilt in *State v. Kirkpatrick*, 286 Kan. 329, 184 P.3d 247 (2008), *overruled on other grounds by State v. Barlett*, 308 Kan. 78, 418 P.3d 1253 (2018). After Kirkpatrick was convicted, he filed a motion to recall the jury based on an affidavit from a juror's coworker. The affidavit said the coworker overheard the juror commenting at her place of employment during the trial that "'she did not know why everyone was wasting their time and that [Kirkpatrick] was guilty.'" *Kirkpatrick*, 286 Kan. at 351. The Supreme Court upheld the district court's denial of the motion, finding the comments were misconduct

7

but did not require a new trial. The court noted that the affidavit did not suggest that the juror's opinion was final or that she had shared her views with other jurors. 286 Kan. at 355. Thus, evidence that a juror made an improper statement is not enough to show substantial prejudice; the complaining party must still show an actual effect on the jury. Likewise, the comments here were made before any evidence was offered and Odom has not shown these statements impacted the final opinions of the jury.

Under these circumstances, we cannot say the district court abused its discretion when it concluded Rebecca's affidavit did not provide enough information to justify calling her as a witness at the hearing on Odom's motion for a new trial. While Odom argues these statements show prospective jurors were biased, he does not allege or establish that they made it onto his jury or impacted the opinions of those who did. As such, he fails to establish juror misconduct that substantially prejudiced his right to a fair trial or that the district court's decision was unreasonable.

*Was the joint stipulation about Odom's prior felonies sufficient to establish the felony conviction element of the felon in possession charge?*

Odom was charged with (and ultimately convicted of) criminal possession of a weapon under K.S.A. 21-6304(a)(3). This statute criminalizes, in relevant part:

> "[P]ossession of any weapon by a person who . . . has been convicted of a felony under
> . . . K.S.A. 21-5402, 21-5403, 21-5404, 21-5405, 21-5408, 21-5412(b) or (d), 21-5413(b)
> or (d), 21-5415(a), 21-5420(b), 21-5503, 21-5504(b), 21-5505(b), and 21-5807(b), and
> amendments thereto; . . . has been released from imprisonment for such felony . . . ."
> K.S.A. 21-6304(a)(3).

Before trial, the State moved to admit evidence of Odom's prior felony convictions under K.S.A. 60-455 to establish an element of this charge. But at the pretrial conference, Odom asserted his "right to stipulate that he has a prior felony conviction." See *State v.*

8

*Guebara*, 318 Kan. 458, 465, 544 P.3d 794 (2024) (prosecutors are required to accept defendants' offers to stipulate to their prohibited-felon status in most cases, given the prejudicial nature of such evidence). He also stated he did "not want the jury to see a certified copy of any journal entry of what that conviction is for." He suggested the parties include a stipulation in the jury instructions that the element at issue was met. The State agreed, so long as the stipulation established the necessary element of the offense.

At the jury instruction conference, the parties agreed to modify the traditional pattern instruction on this offense to accommodate Odom's stipulation request, in lieu of the State offering evidence of his prior felony convictions. The modified instruction stated, in relevant part:

> "The defendant is charged in Count II with criminal possession of a weapon by a convicted felon. The defendant pleads not guilty.
> "To establish this charge, each of the following claims must be proved:
> 1. The defendant possessed a weapon.
> 2. The defendant has been released from imprisonment for a felony.
> 3. Less than eight years have elapsed since the defendant satisfied the sentence imposed for the crime.
> 4. This act occurred on or about the 11th day of February, 2021, in Labette County, Kansas."

The jury was also instructed that the parties agreed the following facts were true:

> "(1) The defendant has been released from imprisonment for a felony.
> "(2) Less than eight years have elapsed since the defendant satisfied the sentence imposed for the crime."

On appeal, Odom argues the State failed to present sufficient evidence to establish this offense. K.S.A. 21-6304(a)(3) only criminalizes possession of a weapon by people who have been convicted of certain felonies, and the parties' stipulation did not specify

9

that Odom had been convicted of any of these specific felonies. While we agree the stipulation was inadequate under *Guebara*, we find the deficiency was harmless.

*Standard of Review*

In *Guebara*, our Supreme Court clarified that inadequate elemental stipulations like the one here do not present a "typical sufficiency-of-the-evidence situation." 318 Kan. at 471. Instead, it held the circumstances are more like a court's failure to submit an element of the charged crime to the jury, since the court failed to secure a verdict on some elements of the crime. It based this decision on the fact that the element at issue was not contested by the defendant, nor would it be contested if the conviction were vacated and a new trial ordered. Thus, it determined the constitutional harmless error standard of review applies. 318 Kan. at 472. A court will declare a constitutional error harmless only when the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967]).

*There is no reasonable possibility that the inadequate stipulation affected the verdict.*

Odom correctly argues that because the stipulation provided "only that [he] 'has been released from imprisonment for a felony,' and that 'less than eight years have elapsed since [he] satisfied the sentence imposed for the crime,'" it was insufficient to fulfill the State's obligation to show that he was convicted of one of the specific felonies mentioned in K.S.A. 21-6304(a)(3).

That said, the *Guebara* court found a similar error harmless because the State submitted a certified journal entry of Guebara's conviction into evidence outside the

10

jury's presence, added it to the record on appeal, and was prepared to call his parole officer to testify to Guebara's prohibited-felon status. 318 Kan. at 471. But the State did none of these things here. However, we note *Guebara* came out after Odom's trial, so the lawyers and the district court did not have its guidance in fashioning the stipulation or taking these additional actions. And Odom is still entitled to the benefit of *Guebara* in this appeal. See *State v. Spencer Gifts, LLC*, 304 Kan. 755, 768, 374 P.3d 680 (2016).

Like in *Guebara*, we find the erroneous stipulation harmless. As the State points out, Odom did not contest his guilt on this charge. He admitted at trial that he was not allowed to have or possess a gun at the time of the crime. And, in closing, his counsel stated:

> "Let's talk about criminal possession of a firearm, Count 2. Malcolm Odom is guilty of that. We are not here to deny that. He told you on the stand he shouldn't—it was illegal for him to possess a firearm and he had one. That is not disputed. There is even a stipulation that goes with that, and you heard it read in open Court. You have heard it in the courtroom that stipulation."

Under these circumstances, we find the stipulation, though inadequate, did not affect the outcome of his trial.

*Odom's conviction for criminal use of a weapon was not legally or factually supported.*

Odom was also convicted of criminal use of a weapon under K.S.A. 21-6301(a)(2). He lodges two attacks on this conviction: First, he claims the jury was improperly instructed on the charge, and second, he claims the State did not present sufficient evidence to convict. Both challenges rely on his claim that K.S.A. 21-6301(a)(2) does not criminalize possession of a firearm.

11

The criminal use of weapons statute, K.S.A. 21-6301, prohibits possession of a variety of weapons in a variety of situations. Odom was convicted under K.S.A. 21-6301(a)(2), which prohibits "possessing with intent to use the same unlawfully against another, a dagger, dirk, billy, blackjack, slungshot, dangerous knife, straight-edged razor, throwing star, stiletto or any other dangerous or deadly weapon or instrument of like character." Since the weapon Odom possessed was a firearm, we must determine whether this section applies to firearms.

*Standard of Review*

To resolve this issue, we must determine the meaning of K.S.A. 21-6301(a)(2). This presents a legal question over which we have unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

When construing statutes, we seek to determine the Legislature's purpose or goals in enacting the law—often called legislative intent. Courts are bound by that intent, and we strive to honor it so that laws are applied consistently with the objectives the Legislature meant to achieve. See *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022) (the most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained).

Courts follow a well-established process in determining legislative intent. Since the best evidence is the language chosen by the Legislature to express its intent, we start there, giving common words their ordinary meaning. If the statute's words are clear and unambiguous, we need not look further to determine their meaning. On the other hand, if the statute's language is not self-explanatory, we turn to default rules or assumptions about how the Legislature expresses statutory meaning for assistance. These rules, called "canons of construction," assume the way the Legislature uses language, grammar, punctuation, and sentence structure in drafting statutes is purposeful. See Brannon,

*Canons of Construction: A Brief Overview*, Congressional Research Service (May 9, 2025). We also assume the Legislature did not intend absurd results or to enact meaningless legislation, so we strive to give statutes a reasonable construction. *State v. Gomez*, 320 Kan. 3, 15, 561 P.3d 908 (2025); *State v. Le*, 260 Kan. 845, Syl. ¶ 4, 926 P.2d 638 (1996). And we attempt to reconcile different provisions in a statute to bring them into a workable harmony if possible. *State v. Strong*, 317 Kan. 197, 203, 527 P.3d 548 (2023).

>   *K.S.A. 21-6301(a)(2) does not include firearms.*

Firearms are not mentioned in the list of weapons in (a)(2), so we must determine whether the Legislature meant to include them in the phrase "or any other dangerous or deadly weapon or instrument of like character." Application of the canons and principles just mentioned assist in this endeavor.

First, the phrasing of (a)(2) calls for application of the *ejusdem generis* canon of statutory construction. This canon instructs that where a more general word or phrase follows the enumeration of specific things, the general word or phrase should usually be understood to refer to things of the same kind or within the same classification as the specific terms. See *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 115, 991 P.2d 889 (1999); Scalia & Garner, Reading Law: The Interpretation of Legal Texts, p. 199 (2012). For example, if one speaks of "Eric Church, Luke Combs, Ashley McBryde, and other famous artists," the last noun does not reasonably refer to Pablo Picasso (a renowned painter) or Auguste Rodin (a well-known sculptor). It refers to other famous country music artists.

Here, (a)(2) enumerates specific weapons followed by the more general phrase, "or any other dangerous or deadly weapon or instrument of like character." Applying *ejusdem generis* narrows the meaning of this phrase to encompass items within the same

classification as "a dagger, dirk, billy, blackjack, slungshot, dangerous knife, straight-edged razor, throwing star, [and] stiletto." K.S.A. 21-6301(a)(2). And this reading appears particularly appropriate since the Legislature included the language, "or instrument of like character," seemingly incorporating this canon of construction into the statute or at least signaling its applicability.

As Odom notes, the weapons listed in (a)(2) fall into two categories: (1) weapons with a blade or sharp point (dagger, dirk, dangerous knife, straight-edged razor, throwing star, and stiletto), and (2) weapons used for striking (billy, blackjack, and slungshot). Or, as our Supreme Court described this subsection in *State v. Stubbs*, 320 Kan. 568, 584, 570 P.3d 1209 (2025), it contains a list of "various bladed and blunt weapons." Firearms do not fall within any of these categories. Thus, it does not follow that the Legislature meant for the general phrase in (a)(2) to include firearms. To hold otherwise would render the phrase "or instrument of like character" in that subsection meaningless. See *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 165, 473 P.3d 869 (2020) (courts construing statutes presume the Legislature does not intend to enact meaningless legislation).

A similar canon of statutory construction, *noscitur a sociis*—which means "'it is known by its associates'"—also supports the exclusion of firearms from (a)(2). Black's Law Dictionary 1271 (12th ed. 2024). This doctrine may be applied when the meaning of a word or phrase might be obscure or doubtful when considered in isolation to clarify or ascertain by reference to those words or phrases with which it is associated. When taken in context, a word may have a broader or narrower meaning than it might have if used alone. *Jones v. Kansas State University*, 279 Kan. 128, 150, 106 P.3d 10 (2005). Thus, while a firearm might normally seem to qualify as a "dangerous or deadly weapon," it does not fit within the list of weapons in (a)(2). It is not an "instrument of like character" to those listed. K.S.A. 21-6301(a)(2).

As mentioned, when interpreting the meaning of a specific statutory subsection, courts often look at other subsections of the statute for guidance. And we must construe all subsections of the statute together, or *in pari materia*, "'in an effort to reconcile the provisions so as to make them consistent, harmonious and sensible.'" *Southwestern Bell Tel. Co. v. Beachner Constr. Co.*, 289 Kan. 1262, 1270, 221 P.3d 588 (2009). When doing so here, we note the Legislature extensively discussed firearms in other parts of the statute, criminalizing their possession in some circumstances and exempting them in other circumstances.

For example, the Legislature criminalized possession of firearms in these situations:

> "(5) selling, manufacturing, purchasing or possessing a shotgun with a barrel less than 18 inches in length, or any firearm designed to discharge or capable of discharging automatically more than once by a single function of the trigger, whether the person knows or has reason to know the length of the barrel or that the firearm is designed or capable of discharging automatically;
>
> . . . .
>
> "(7) selling, giving or otherwise transferring any firearm with a barrel less than 12 inches long to any person under 18 years of age whether the person knows or has reason to know the length of the barrel;
>
> "(8) selling, giving or otherwise transferring any firearms to any person who is both addicted to and an unlawful user of a controlled substance;
>
> "(9) selling, giving or otherwise transferring any firearm to any person who is or has been a mentally ill person subject to involuntary commitment for care and treatment, as defined in K.S.A. 59-2946, and amendments thereto, or a person with an alcohol or substance abuse problem subject to involuntary commitment for care and treatment as defined in K.S.A. 59-29b46, and amendments thereto;
>
> "(10) possessing any firearm by a person who is both addicted to and an unlawful user of a controlled substance;
>
> "(11) possessing any firearm by any person, other than a law enforcement officer, in or on any school property or grounds upon which is located a building or structure

15

used by a unified school district or an accredited nonpublic school for student instruction or attendance or extracurricular activities of pupils enrolled in kindergarten or any of the grades one through 12 or at any regularly scheduled school sponsored activity or event whether the person knows or has reason to know that such person was in or on any such property or grounds;

"(12) refusing to surrender or immediately remove from school property or grounds or at any regularly scheduled school sponsored activity or event any firearm in the possession of any person, other than a law enforcement officer, when so requested or directed by any duly authorized school employee or any law enforcement officer;

"(13) possessing any firearm by a person who is or has been a mentally ill person subject to involuntary commitment for care and treatment, as defined in K.S.A. 59-2946, and amendments thereto, or persons with an alcohol or substance abuse problem subject to involuntary commitment for care and treatment as defined in K.S.A. 59-29b46, and amendments thereto;

"(14) possessing a firearm with a barrel less than 12 inches long by any person less than 18 years of age;

"(15) possessing any firearm while a fugitive from justice;

"(16) possessing any firearm by a person who is an alien illegally or unlawfully in the United States;

"(17) possessing any firearm by a person while such person is subject to a court order that:

(A) Was issued after a hearing, of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking or threatening an intimate partner of such person or a child of such person or such intimate partner, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or the child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or

"(18) possessing any firearm by a person who, within the preceding five years, has been convicted of a misdemeanor for a domestic violence offense, or a misdemeanor

16

under a law of another jurisdiction which is substantially the same as such misdemeanor offense." K.S.A. 21-6301(a).

And it exempted possession of firearms from criminal liability in these situations:

"(d) Subsections (a)(4) and (a)(5) shall not apply to any person who sells, purchases, possesses or carries a firearm, device or attachment which has been rendered unserviceable by steel weld in the chamber and marriage weld of the barrel to the receiver and which has been registered in the national firearms registration and transfer record in compliance with 26 U.S.C. § 5841 et seq. in the name of such person and, if such person transfers such firearm, device or attachment to another person, has been so registered in the transferee's name by the transferor.

. . . .

"(h) Subsections (a)(4) and (a)(5) shall not apply to or affect any person or entity in compliance with the national firearms act, 26 U.S.C. § 5801 et seq.

. . . .

"(j) Subsection (a)(11) shall not apply to:

(1) Possession of any firearm in connection with a firearms safety course of instruction or firearms education course approved and authorized by the school;

(2) possession of any firearm specifically authorized in writing by the superintendent of any unified school district or the chief administrator of any accredited nonpublic school;

(3) possession of a firearm secured in a motor vehicle by a parent, guardian, custodian or someone authorized to act in such person's behalf who is delivering or collecting a student;

(4) possession of a firearm secured in a motor vehicle by a registered voter who is on the school grounds, which contain a polling place for the purpose of voting during polling hours on an election day; or

(5) possession of a concealed handgun by an individual who is not prohibited from possessing a firearm under either federal or state law . . . .

"(k) Subsections (a)(9) and (a)(13) shall not apply to a person who has received a certificate of restoration pursuant to K.S.A. 75-7c26, and amendments thereto.

"(l) Subsection (a)(14) shall not apply if such person, less than 18 years of age, was:

(1) In attendance at a hunter's safety course or a firearms safety course;

(2) engaging in practice in the use of such firearm or target shooting at an established range authorized by the governing body of the jurisdiction in which such range is located, or at another private range with permission of such person's parent or legal guardian;

(3) engaging in an organized competition involving the use of such firearm, or participating in or practicing for a performance by an organization exempt from federal income tax pursuant to section 501(c)(3) of the internal revenue code of 1986 which uses firearms as a part of such performance;

(4) hunting or trapping pursuant to a valid license issued to such person pursuant to article 9 of chapter 32 of the Kansas Statutes Annotated, and amendments thereto;

(5) traveling with any such firearm in such person's possession being unloaded to or from any activity described in subsections (l)(1) through (l)(4), only if such firearm is secured, unloaded and outside the immediate access of such person;

(6) on real property under the control of such person's parent, legal guardian or grandparent and who has the permission of such parent, legal guardian or grandparent to possess such firearm; or

(7) at such person's residence and who, with the permission of such person's parent or legal guardian, possesses such firearm for the purpose of exercising the rights contained in K.S.A. 21-5222, 21-5223 or 21-5225, and amendments thereto." K.S.A. 21-6301.

Considering how extensively and specifically firearms are treated in other parts of the statute, it seems hard to believe the Legislature meant to include firearms in (a)(2)'s prohibition, particularly through such generic phrasing. This interpretation is also in line with the canon known as *expression unius est exclusio alterius,* i.e., the mention or inclusion of one thing implies the exclusion of another. See *In re Marriage of Killman*, 264 Kan. 33, 37, 955 P.2d 1228 (1998). That is, by including firearms restrictions in other subsections of the statute—and using the term firearms—the Legislature demonstrated its intent to criminalize firearms in the situations specifically mentioned

rather than including them in the general provision of (a)(2). And we cannot graft words from other subsections into (a)(2) because we must "read the statutory language as it appears, without adding or deleting words." *State v. Gray*, 306 Kan. 1287, 1294, 403 P.3d 1220 (2017).

Along those same lines, the only way a firearm could be included in (a)(2) is if it is considered to be "any other dangerous or deadly weapon or instrument of like character" to those listed in that subsection. "Weapon" is not defined in K.S.A. 21-6301. But it is defined in a similar statute (and another under which Odom was convicted). K.S.A. 21-6304 criminalizes possession of a weapon by a convicted felon. That statute defines weapon to mean a firearm or knife. K.S.A. 21-6304(d)(2). If the Legislature had intended weapon, as that term is used in K.S.A. 21-6301(a)(2), to include a firearm, it could have defined the term to include a firearm—like it did in K.S.A. 21-6304—or even referenced the definition in K.S.A. 21-6304. Because it did not, we can reasonably conclude it did not intend to include a firearm in the definition of weapon in K.S.A. 21-6301(a)(2).

We also note that other statutes which either reference K.S.A. 21-6301 or are near it suggest firearms are defined separately from the weapons prohibited in (a)(2). For instance, K.S.A. 21-5922, which criminalizes interference with the conduct of public business, defines the aggravated version of that crime as conduct prohibited by that statute "when in possession of any firearm or weapon as described in K.S.A. 21-6301 or 21-6302." K.S.A. 21-5922(b). And K.S.A. 21-6302 addresses criminal carrying of a weapon to include knowingly carrying:

"(1) Any bludgeon, sandclub, metal knuckles or throwing star;
"(2) concealed on one's person, a billy, blackjack, slungshot or any other dangerous or deadly weapon or instrument of like character;

19

"(3) on one's person or in any land, water or air vehicle, with intent to use the same unlawfully, a tear gas or smoke bomb or projector or any object containing a noxious liquid, gas or substance;

"(4) any pistol, revolver or other firearm concealed on one's person if such person is under 21 years of age, except when on such person's land or in such person's abode or fixed place of business; or

"(5) a shotgun with a barrel less than 18 inches in length or any other firearm designed to discharge or capable of discharging automatically more than once by a single function of the trigger whether the person knows or has reason to know the length of the barrel or that the firearm is designed or capable of discharging automatically." K.S.A. 21-6302(a).

In both K.S.A. 21-5922 and K.S.A. 21-6302, firearms are addressed separately from other weapons. And K.S.A. 21-6302 even prohibits carrying, concealed on one's person, a listing of weapons that is similar to the list in K.S.A. 21-6301(a)(2) in one subsection, but separately addresses firearms in another subsection. K.S.A. 21-6302(a)(2), (a)(4). That is, in K.S.A. 21-6302, firearms are not considered "any other dangerous or deadly weapon or instrument of like character" since they are addressed in another provision. Likewise, we find they are not included in K.S.A. 21-6301(a)(2) because they are addressed in other provisions of that statute.

In sum, due to the phrasing of K.S.A. 21-6301(a)(2) and the extensive discussion of firearms in other subsections of K.S.A. 21-6301, we find the Legislature did not intend for firearms to be covered by that provision. While Kansas appellate courts have held the term "deadly weapon" includes firearms in other contexts, depending on the crime at issue, we do not find the Legislature intended to do so here. See *State v. Carter*, 311 Kan. 206, 211, 459 P.3d 186 (2020) (recognizing various interpretations of the term "deadly weapon," depending on the crime).

In *Carter*, our Supreme Court interpreted the term deadly weapon as it is used in the Kansas Offender Registration Act (KORA). See K.S.A. 22-4902(e)(2). It recognized this term may have a different meaning depending on the context in which it is used, including the type of statute. And it stated that the definition of the term in one statute (there, a civil regulatory scheme like KORA) "is not tethered to" its definitions in separate criminal statutes. 311 Kan. at 213. It employed the usual rules of statutory construction to determine the Legislature's meaning of the term as it is used in KORA and found, in that context, deadly weapon included a firearm. 311 Kan. at 213-14.

Yet we are interpreting a different statute here. And applying some of the same rules of statutory construction, we find firearms are not included in the weapons listed in K.S.A. 21-6301(a)(2).

*Odom's criminal use of a weapon jury instruction was clearly erroneous because it did not accurately state the law.*

Odom's jury was instructed that, to establish the charge of criminal use of a weapon, the State had to prove he "knowingly possessed with the intention to use the same unlawfully against another a firearm." He claims on appeal this instruction was clearly erroneous because it misstated the law.

> "For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice." *State v. Mendez*, 319 Kan. 718, 727-28, 559 P.3d 792 (2024).

Since jury instructions must fairly and accurately state the law, an instruction which does not do so is not legally appropriate. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). Because we have found firearms are not the type of weapon included in

K.S.A. 21-6301(a)(2), the subsection Odom was charged under, his jury instruction on this crime was legally infirm and the district court erred in giving it. And because the only weapon at issue here was a firearm, we find the jury would have reached a different verdict if the erroneous instruction had not been given.

That is, if the jury had been properly instructed that it had to find Odom "knowingly possess[ed] with [the] intent[ion] to use the same unlawfully against another, a dagger, dirk, billy, blackjack, slungshot, dangerous knife, straight-edged razor, throwing star, stiletto or any other dangerous or deadly weapon or instrument of like character," as the statute reads, we believe it would not have found him guilty of this offense.

Odom had no chance of a not guilty verdict on the weapon element of this charge because the jury was instructed it could convict if it found he possessed a firearm—which is not the law. We thus find the jury instruction on this charge was clearly erroneous and reverse Odom's conviction for this crime.

*There was insufficient evidence to convict Odom of criminal use of a weapon.*

Odom contends that because a firearm is not prohibited by K.S.A. 21-6301(a)(2), the State presented insufficient evidence to convict him of criminal use of a weapon. In other words, because the State offered no evidence that he possessed any of the weapons prohibited by (a)(2), then it did not satisfy its burden to convict him of this charge.

In a criminal case,

> "[w]hen a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh

22

evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses."
*Mendez*, 319 Kan. at 723.

The State does not contend that it offered evidence of any weapon other than a firearm. Instead, it solely relies on its argument that a firearm is one of the weapons prohibited by K.S.A. 21-6301(a)(2). But since we have found that a firearm is not included in that subsection, then we must necessarily conclude the State did not offer sufficient evidence to convict Odom of this charge. We therefore recognize this as an alternate reason to reverse Odom's conviction.

CONCLUSION

For these reasons, we affirm Odom's convictions for voluntary manslaughter and criminal possession of a weapon by a felon, reverse his conviction for criminal use of a weapon, and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.